IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | ) ) ) |
| LACLEDE ELECTRIC COOPERATIVE, INC., | ) ) |
| Plaintiff, | ) ) |
| and | ) Civil Action No. _____ |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 53, | ) ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT
## (MOTION TO VACATE ARBITRATION AWARD)

COMES NOW Plaintiff, Laclede Electric Cooperative, Inc. ("Laclede Electric"), and moves for an Order, pursuant to 9 U.S.C. § 10, vacating the Award of the Arbitrator outlined herein and attached hereto. In support thereof, Plaintiff alleges the following:

1. Plaintiff is a rural electric cooperative registered under the laws of the State of Missouri, with its place of business in Lebanon, Laclede County, Missouri. Laclede Electric is and was at all times material herein an "employer" as defined in the National Labor Relations Act, 29 U.S.C. § 152(2).

2. Defendant, International Brotherhood of Electrical Workers, Local Union No. 53 ("the Union"), is an unincorporated labor association which is a labor organization as defined in the National Labor Relations Act, 29 U.S.C. § 152(5), which transacts business at Plaintiff's place of business in Lebanon, Laclede County, Missouri, and has a registered address within the jurisdiction of this Court.

3. The jurisdiction of the Court is invoked under Section 301(a) of the Labor

Management Relations Act, 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and 28 U.S.C. § 1337.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. Plaintiff and Defendant have a negotiated collective bargaining agreement, effective January 1, 2020 through December 31, 2024 ("Contract"). Said Contract is between Plaintiff as an employer and Defendant as a labor organization under 29 U.S.C. § 185.

6. The Contract involves interstate commerce and employee activities which affect interstate commerce.

7. The Contract sets forth time limit requirements relating to the processing of grievances at Article IX, Section 1, which includes the following requirement:

> **Action on a grievance must be started within eleven (11) working days from the time that the incident resulting in the grievance occurred or became known to the Union, otherwise it need not be considered. . . .**

[**Bold** emphasis added.]

8. The Contract sets forth time limit requirements relating to the processing of grievances at Article IX, Section 2, which includes the following requirement:

> **Failure of the Union or employees to take action within the time limits set forth above shall result in the matter being dropped.**
>
> . . . Time limits at all steps may be extended only by written mutual agreement.

[**Bold** emphasis added.]

9. The Contract outlines an Arbitration procedure, and sets forth the powers of the Arbitrator, at Article IX, Section 1, Step 3, which states (Subparagraph (c) of Section 1, Step 3) that **the Arbitrator "shall not have the power to deviate from, alter, change or amend any of the provisions of this Agreement."** [**Bold** emphasis added.]

10. The Contract includes in its Management Rights provision at Article IV the following right of Management:

> **. . . The Cooperative shall retain solely and exclusively the right to decide policies**, . . .
>
> [**Bold** emphasis added.]

11. Pursuant to that Management Rights provision of the Contract, Plaintiff adopted Policy No. H-15, which included at Section B, the following:

> Any time an employee is absent (does not have compensable time) in excess of 40 consecutive hours, that employee will be billed the entire costs for the programs in which that employee participates.
>
> **In instances of prolonged illness or injury and the employee participates in the L.T.D. program and claim is approved, said employee is responsible for the total costs of coverages available (Medical and Dependent Life.)** The total costs of Basic and Supplemental Life and the Retirement Program must be paid by said employee until these costs are waived (26 weeks after date of disability).
>
> [**Bold** emphasis added.]

12. Plaintiff has consistently applied the above-outlined Policy No. H-15 to both union and non-union employees of Plaintiff, without any prior grievance by Defendant.

13. As a result of a workplace accident/injury, Grievant (Larry Taylor) was off work during November and December, 2020. Following a brief return to work, Grievant was off work again from January through early June of 2021. After being off for a total of twelve (12) weeks, Grievant applied for and was approved for Long-Term Disability ("LTD").

14. In January of 2021, while on leave, Grievant spoke with Laura Gideon, Plaintiff's Human Resources Director, about the LTD options and how that process would work. Grievant spoke with Ms. Gideon about the process again on March 12, at which time she explained that, pursuant to Cooperative Policy H-15, if Grievant went on LTD, he would be required to pay the full amount of his insurance premiums. Thereafter, Grievant and Ms. Gideon had an in-person meeting regarding the packet that was provided to Grievant in January, 2021, to again discuss the packet and LTD process (including required premium payments).

15. At least as early as April 27, 2021, Grievant knew he was expected to pay the full cost of his insurance premiums if he went on LTD, and he chose to apply for LTD knowing that requirement. On that same date, Grievant also signed the option form opting to continue insurance after he had received information that he would have to pay the full amount of the premiums.

16. On May 1, 2021, and pursuant to Policy No. H-15, Grievant was invoiced by Plaintiff for the full cost of his insurance, and he thereafter paid the full premium amount for May through a check written by his wife.

17. Grievant has, at all relevant times in this matter, served as a Steward for Defendant, and is therefore defined by the Contract, at Article VIII, as "the Union representatives of the employees."

18. Though admittedly being aware by at least April 27, 2021, of the requirement

to pay the full cost of insurance upon going on LTD, Grievant did not mention nor complain about the issue to the Union Business Agent, Ben Bush, until May 14, 2021.

19. Defendant filed a Grievance with Plaintiff on May 25, 2021, claiming a violation of Grievant's rights by Plaintiff occurring on May 14, 2021.

20. Grievant did not follow Step 1 of the grievance process outlined in the Contract.

21. Based upon the dates outlined on the face of the Grievance, the Grievance appeared to be filed within the time limits outlined in the Contract (within eleven (11) working days from the date of the action complained of).

22. The Grievance was processed by Plaintiff and Defendant without settlement.

23. On July 7, 2021, Defendant sent a letter to Plaintiff outlining Defendant's intent to proceed to arbitration in the matter.

24. Thereafter, an arbitrator was selected by the parties through the Federal Mediation and Conciliation Service, and a Hearing date was scheduled with the selected arbitrator for February 23, 2022.

25. A few days prior to the scheduled arbitration Hearing, Plaintiff discovered that the date of Plaintiff's action being complained of by Defendant (April 27, 2021), as referenced in Defendant's request for arbitration, was **not** the same as the date of the complained of action (May 14, 2021), as referenced in the underlying Grievance.

26. Using the date of April 27, 2021, as the date of Plaintiff's action about which Defendant complains in the Grievance would have required the Grievance to be filed no later than May 12, 2021, thereby making the Grievance in this case untimely filed and therefore the Grievance "need not be considered" pursuant to the express terms of the

Contact.

27. On February 21, 2022, counsel for Plaintiff notified counsel for Defendant of the discovery of the date discrepancy and requested that such issue be reviewed and addressed before the Hearing.

28. An Arbitration Hearing was held in this matter on February 23, 2022.

29. At the Hearing, Defendant presented the following Statement of the Issue:

> Did the Company violate Article 19 [XIX] of the parties' Collective Bargaining Agreement by requiring an employee, who was off work on long-term disability, to pay 100 percent of his medical, dental, spouse and child life insurance premiums for the month of May 2021 and, if so, what is the proper remedy?

30. At the Hearing, Plaintiff presented the following Statement of the Issues:

> Issue 1: Was the Grievance timely filed as required by Article IX, Section 1 of the Collective Bargaining Agreement?
>
> Issue 2: If the Grievance was timely filed, did the Company violate the Collective Bargaining Agreement by requiring, pursuant to the express language of Cooperative Policy No. H-15, the Grievant to pay the total cost of his medical, dental, and spouse and child life insurance premiums for the month of May 2021, while he was participating in the Long-Term Disability program?

31. Neither in response to the notice on February 21, 2022, nor at the Hearing on February 23, 2022, did Defendant make any claim that Plaintiff's raising of the

timeliness issue was not raised in a timely manner or waived.

32.  In Defendant's Post-Hearing Brief, Defendant for the first time made a claim that Plaintiff had waived the timeliness issue.

33.  Defendant bore the burden of proving by a preponderance of the evidence that Plaintiff violated the Contract.

34.  On June 1, 2022, Arbitrator Steven E. Kane issued his Opinion and Award ("Award"). The Award is dated May 31, 2022, but was not served on the parties until the next day, June 1, 2022. A copy of the Award, with the transmitting email from Arbitrator Kane, are attached hereto, as Exhibit A.

35.  In the Award, at p. 2, the Arbitrator framed the issue as follows:

> Did the Employer violate Article XIX of the parties' Collective Bargaining Agreement by requiring the Grievant, who was off work on long-term disability, to pay 100 percent of his medical, dental, spouse and child life insurance premiums for the month of May 2021? Was the grievance procedure followed properly? If not, what should be the remedy?

36.  In the Award, the Arbitrator found against Plaintiff on both the timeliness issue and the merits of the dispute.

37.  After reviewing the Award, Plaintiff submitted a Motion for Reconsideration to Arbitrator Kane on June 16, 2022. A copy of the Motion for Reconsideration packet submitted to Arbitrator Kane is attached hereto, as Exhibit B.

38.  Defendant submitted its response to the Arbitrator on July 1, 2022. A copy of Defendant's response is attached hereto, as Exhibit C.

39.  On July 14, 2022, the Arbitrator granted Plaintiff's Motion for

Reconsideration, and the parties thereafter held an oral argument by telephone on August 22, 2022.

40. Arbitrator Kane issued his Ruling on Motion for Reconsideration on August 24, 2022. A copy of the Ruling is attached hereto, as Exhibit D.

41. Arbitrator Kane's Award, with the clarifying Ruling on Motion for Reconsideration, collectively referred to herein as "the Arbitrator's Award," should be vacated and set aside for the following reasons:

a. The Arbitrator's Award does not draw its essence from the lawful provisions of the Contract, and fails to follow negotiated provisions in the Contract;

b. The Arbitrator exceeded his powers by going beyond the limits of his authority outlined in the Contract; and

c. The Arbitrator instilled his own personal standards of industrial justice.

WHEREFORE, Plaintiff moves the Court for an Order vacating the Arbitrator's Award, and for such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    **LAW OFFICES OF RICK E. TEMPLE, LLC**

    By    /s/ Rick E. Temple
        Rick E. Temple
        Missouri Bar No. 33257

1358 E. Kingsley, Suite D
Springfield, MO 65804

Telephone No.: (417) 877-8988

Attorney for Plaintiff

DATED: This 31st day of August, 2022.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **Complaint (Motion to Vacate Arbitration Award)** was served upon the following individual, to-wit:

> Scott L. Brown, Esq.
> Law Offices of Blake & Uhlig, P.A.
> 753 State Ave., Ste. 475
> Kansas City, KS 66101
>
> E-Mail: slb@blake-uhlig.com

by e-mail, duly addressed to said individual, on this 31st day of August, 2022.

/s/ Rick E. Temple
Rick E. Temple