IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

IN THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| LACLEDE ELECTRIC COOPERATIVE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 6:22-cv-03227-MDH<br>) |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 53, | )<br>)<br>)<br>) |
| Defendant. | ) |

## ORDER

Before the Court are the parties' cross motions for summary judgment. For reasons herein, Plaintiff's Motion for Summary Judgment is **DENIED**, while Defendant's Motion for Summary Judgment is **GRANTED**. Summary judgment is hereby entered in favor of Defendant.

## BACKGROUND

Plaintiff's complaint asks this Court to overturn an arbitration decision finding Plaintiff violated a contractual obligation to pay part of a union member's insurance premiums while on long-term disability for one month. Plaintiff is a utilities cooperative ("Cooperative" or "Plaintiff") operating in Central Missouri. Defendant is a labor union ("Union" or "Defendant") that represents some of Plaintiff's employees.

The general facts giving rise to this matter remain undisputed. During 2020, Larry Taylor, a lineman for Plaintiff and member of the Union, suffered a workplace injury. The injury caused Mr. Taylor to miss several months of work. After exhausting other types of leave, Mr. Taylor went onto Plaintiff's long-term disability program for the month of May 2021. During the month Mr.

1

Taylor was on long-term disability, Plaintiff billed Mr. Taylor for the entirety of his insurance premiums. Typically, when not on long-term disability, Plaintiff paid a portion of Mr. Taylor's monthly insurance premiums, pursuant to terms of the negotiated a collective bargaining agreement ("CBA"), a binding contract that guides employment-related matters between Plaintiff and members of the Union. Specifically, Article XIX of the CBA, titled "Employee Medical, Prescription Drug, Long Term Disability, Life and Dental Insurance," provides the following.

1. Medical Insurance
(a) Two Preferred Provider Organizations (PPO) major medical and drug prescription plan choices, as administered by NRECA, will be maintained in full force and effect during the term of this Agreement unless the plan is canceled or changed through mandatory, non-discretionary changes and revisions. No changes will be made by the parties (as opposed to NRECA) unless mutually agreed to by the parties.
(b) The Cooperative shall pay 75% and the employee shall pay 25% of the premium for individual and family coverage.
2. Long Term Disability shall continue to be paid 50% by the Cooperative and 50% by the employee.

Mr. Taylor's wife wrote a check for the entirety of the premium on or about May 3, 2021, which was debited from Mr. Taylor's account on or about May 10, 2021. On May 14, 2021, Mr. Taylor contacted Ben Bush, business manager for the Union, about Plaintiff requiring Mr. Taylor to pay 100 percent of his insurance premiums. Mr. Bush filed a grievance with Plaintiff on May 25, 2021, claiming Plaintiff violated Article XIX of the CBA by requiring Mr. Taylor to pay 100 percent of his insurance premiums for May 2021. Article IX of the CBA identifies the process by which disputes between the Cooperative and members of the Union are handled, including the grievance process. The relevant language of Article IX, titled Grievance and Arbitration Procedure, provides the following.

> Section 1. Any dispute over the interpretation or application of this Agreement, or other agreements made between management and employees which can be verified shall be settled through the grievance procedure as outlined below.

Step 1: Action on a grievance must be started within eleven (11) working days from the time the incident resulting in the grievance occurred or became known to the Union, otherwise it need not be considered. The employee may be accompanied by the steward. The Department Head shall give his verbal answer not less than 5 working days following notice of the grievance.

…

Step 3: If no settlement is then reached any matter or matters remaining in dispute shall, at the request of the representative of either or both parties, be submitted to arbitration within 21 working days from management's written response as follows:

…

(c) The powers of the arbitrator shall be limited as follows:

1. The arbitrator shall not have the power to deviate from, alter, change, or amend any of the provisions of this Agreement.

(d) The decision of the arbitrator shall be final and binding upon both parties.

Section 2. Failure of the Union or employees to take action within the time limits set forth above shall result in the matter being dropped…Time limits may be extended only by written mutual agreement.

Throughout this dispute, from the initial grievance until the present litigation, Plaintiff's position appears to remain unchanged. It contends that it was responsible for paying none of Mr. Taylor's insurance premiums while he took part in the long-term disability program. Plaintiff's position rests on two specific sections of the CBA, as well as one Cooperative policy, separate from the language of the CBA. The first CBA section Plaintiff cites is Article X, specifically titled "Seniority," which in relevant part states as follows.

…

Section 5. Seniority shall be lost by the occurrence of any of the following:

…

G. If a regular employee is absent because of illness or injury and has exhausted his sick leave and vacation, he shall retain his seniority rights for one year, his name to remain on the seniority list during such absence. The employee shall not accrue, or be paid any benefits based upon a calculation for the time during which such employee is absent.

3

Plaintiff contends the last sentence of Section 5(G) indicates that Union members are unentitled to receive any benefits while on long-term disability. Defendant disagrees, emphasizing this language appears in a section of the CBA that specifically and only deals with how one may determine a Union member's seniority. Therefore, according to Defendant, Article X's language indicating the employee shall not be paid benefits during absence, is relevant only to determinations of seniority loss, not whether the Cooperative must pay a portion of Union members' health insurance premiums while on long-term disability. No language within Article X appears to explicitly expand the scope of that Article's authority to matters outside of issues of seniority.

Plaintiff's argument also relies on Article IV of the CBA, titled "Management Rights," which reads in pertinent part as follows.

> Except as specifically contracted away by an expressed provision of this Agreement, the Cooperative shall retain solely and exclusively all rights, powers, and prerogatives to manage the business. It is agreed that the rights of management referred to in this Article are not all inclusive and the omission of any of the usual inherent and fundamental rights of management, does not constitute a waiver of such rights by the Cooperative.

The parties generally agree that Article IV of the CBA grants Plaintiff the ability to make management decisions for all employees, including members of the Union, to the extent such decisions do not contravene other portions of the CBA. Plaintiff asserts that the issue of whether Plaintiff pays part of Union members' insurance premiums while on long-term disability falls outside the scope of the CBA, and therefore Plaintiff retains the right to set its own policy on that issue. Defendant disagrees, contending the CBA specifically requires Plaintiff to pay a portion of Union members' insurance premiums, regardless of long-term disability status.

Finally, separate from the above sections of the CBA, Plaintiff relies on Laclede Electric Cooperative Policy H-15, an internal protocol titled "Employee Benefits, Group Insurance,

4

Retirement, and Savings." Policy H-15 applies to all employees regardless of Union status and provides, in pertinent part, as follows.

> A. The Cooperative will make available the following coverages:
> B. Any time an employee is absent (does not have compensable time) in excess of 40 consecutive hours, that employee will be billed the entire costs for the programs in which that employee participates.
>
> In instances of prolonged illness or injury and the employee participates in the L.T.D. program and claim is approved, said employee is responsible for the total costs of coverages available (Medical and Dependent life). The total costs of Basic and Supplemental Life and the Retirement Program must be paid by said employee until these costs are waived (26 weeks after date of disability).

The parties agree that the text of Policy H-15 indicates Union members are responsible for the total amount of health insurance premiums while on long-term disability. The parties disagree, however, as to the effect of H-15. In Plaintiff's view, Policy H-15 is the controlling authority on the matter, as the CBA does not address the issue of health insurance premium payment while on long-term disability and therefore Article IV grants Plaintiff authority to enact its own policy on the matter. Defendant on the other hand contends that Plaintiff did not validly enact Policy H-15 according to its management rights, as H-15 conflicts with Article XIX, requiring Plaintiff to pay a portion of all Union members' health insurance premiums.

The parties failed to resolve the matter in the grievance process and therefore, according to Article IX of the CBA, the dispute proceeded to formal arbitration. In addition to the substantive matter identified above, Plaintiff presented as an issue for arbitration the procedural matter of whether Mr. Taylor violated Article IX of the CBA by initiating the grievance process more than eleven "working days from the time the incident resulting in the grievance occurred or became known to the Union." CBA Article IX, Section 1. The arbitrator, Steven E. Kane ("Arbitrator"), identified the issues to address as follows.

5

> Did the Employer violate Article XIX of the parties' Collective Bargaining Agreement by requiring the Grievant, who was off work and on long-term disability, to pay 100 percent of his medical, dental, spouse and child life insurance premiums for the month of May 2021? Was the grievance procedure followed properly? If not, what should be the remedy?

The Arbitrator found, *inter alia*, Plaintiff violated the CBA by requiring Mr. Taylor to pay 100 percent of his insurance premium, awarding Mr. Taylor any expense or out-of-pocket cost associated with the grievance. Specifically, the Arbitrator found that Policy H-15 contradicted the plain and unambiguous language of CBA Article XIX, which requires Plaintiff to pay seventy-five percent of Union members' insurance premiums. In concluding the language of Article XIX lacks ambiguity, the Arbitrator relied in part on absence of evidence of a well-established practice that would contradict the apparent meaning of Article XIX. The Arbitrator found that the record contained evidence of a single instance of a Union member paying 100 percent of his insurance premiums while on long-term disability, which did not rise to the level of a well-established practice.

As to the procedural issue, the Arbitrator stopped short of explicitly finding that Defendant's grievance was untimely, given the eleven working day window identified by Article IX. Rather, the Arbitrator noted that Plaintiff's failure to assert the timeliness argument during the grievance period, prior to formal arbitration, prejudiced the Union in that it stripped the Union of the ability to adequately consider whether to settle the dispute. Accordingly, the Arbitrator barred Plaintiff "from asserting the timeliness issue for the first time at the arbitration step. Thus, the procedural mistakes of both parties cancel each other out." (Doc. 13-3 at 14). The Arbitrator affirmed his initial decision after granting Plaintiff's Motion for Reconsideration. In doing so, the Arbitrator recognized the record contained references to two instances of Union members being required to pay 100 percent of their insurance premiums while on long-term disability, rather than the single instance described in the Arbitrator's initial order. Nonetheless, the Arbitrator concluded

this is insufficient to rise to the level of a well-established practice that would cast doubt on the plain language of Article XIX, especially given neither instance referenced proceeded through a grievance process.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court identified general guiding principles of a court's review of an arbitration award in three cases commonly referred to as the "Steelworkers Trilogy." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960). Collectively, these cases demonstrate a high level of deference to the arbitrator's decision that may be overturned only when an arbitrator exceeds his authority or if the arbitrator's award fails to "draw

its essence" from the collective bargaining agreement at issue. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597-600 (1960).

Courts are required to "broadly construe the collective bargaining agreement's grant of power to the arbitrator." *Int'l Bhd. of Elec. Workers, Loc. Union No. 53, AFL-CIO v. Sho-Me Power Corp.*, 715 F.2d 1322, 1325 (8th Cir. 1983) (internal citations omitted). Crucially, reviewing courts are prohibited from judging the merits of an underlying grievance. *Kewanee Machinery Division v. Local Union No. 21, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 593 F.2d 314, 317 (8th Cir.1979). Put differently, courts may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987). Instead, this Court's review of an arbitration award is "extremely narrow" and does not look beyond "whether the arbitrator's decision draws its essence from the contract." *Exec. Life Ins. Co. of New York v. Alexander Ins. Ltd.*, 999 F.2d 318, 320 (8th Cir. 1993) (internal citations omitted).

## DISCUSSION

Plaintiff makes two arguments for overturning the arbitration decision in favor of Defendant: 1) the Arbitrator's handling of the procedural timeliness issue failed to draw its essence from the CBA; and 2) the Arbitrator failed to follow the totality of the CBA and Policy H-15, which collectively show that Plaintiff is not required to pay any portion of Mr. Taylor's insurance premiums for May 2021, while on long-term disability. This Court will address each argument in turn.

## I. The Arbitrator's Decision on the Procedural Matter Drew its Essence from the Contract

Plaintiff takes issue with the Arbitrator's conclusion that "the procedural mistakes of both parties cancel each other out." (Doc. 13-3 at 14). As to Plaintiff's procedural timeliness argument, the Arbitrator found the following.

> The CBA has an eleven working day limit from the alleged contract violation or Union knowledge of the alleged violation. The Grievant was clearly aware of the grievable incident on April 27, 2021 when he executed a form to elect optional insurance coverages while on [long-term disability] after being informed he would have to pay the full cost of them. The actual grievance was filed on May 25, 2021. The Union argues that his status as a shop steward didn't matter with regard to Union knowledge of the incident since the Grievant was off work. However, it did not notify the Employer of any change in Steward status as required by Article VII of the Agreement. This delay in filing the grievance might have prevented the Union from prevailing in arbitration.
>
> However, the Employer did not raise this defense during the grievance procedure. The Arbitrator believes strongly that disputes should be fully discussed at the earliest step of a grievance and arbitration protocol. Failure to assert this procedural defect of the Union's actions prevented it from considering whether to settle this case. As such, the Arbitrator is barring the Employer from asserting the timeliness issue for the first time at the arbitration step.
>
> Thus, the procedural mistakes of both parties cancel each other out.

Plaintiff contends that this conclusion does not take its essence from the CBA because the contract specifically states, "Failure of the Union or employees to take action within the time limits set forth above shall result in the matter being dropped…Time limits may be extended only by written mutual agreement." Article IX, Section 2. From Plaintiff's perspective, it is reversible error for the Arbitrator to have determined that the parties' respective mistakes cancel out one another, because the contract specifically states that, if a grievance is not initiated within eleven working days after the event giving rise to the grievance occurred or became known to the Union, then the CBA

requires that the matter be dropped. Because Plaintiff learned on April 27, 2021 that Defendant would charge him for the full insurance premium, Plaintiff argues, the grievance filed on May 25, 2021 did not comport with the timeframe outlined in Article IX. Plaintiff further argues the timeliness issue wasn't discoverable until after completion of the grievance procedure, prior to arbitration, because Mr. Taylor amended the date of the improper action from May 14, 2021 until April 27, 2021, only after the grievance procedure concluded.[1]

As an initial matter, Plaintiff's point about the discoverability of the timeliness issue makes little sense. Even if Defendant amended the date of the alleged improper action after the grievance procedure, the specific complained-of act has remained the same throughout. Defendant took issue with Plaintiff charging Mr. Taylor for his full insurance premium and Mr. Taylor's payment of that premium. The parties agree that Plaintiff gave notice about the premiums to Mr. Taylor on April 27, 2021. Plaintiff could have discovered any alleged timeliness issue from the earliest moment in the grievance process. This is true even if disagreement exists between the parties about whether the specific complained-of act is notice given to Mr. Taylor regarding the need to pay the entire premium or the date funds were eventually debited from Mr. Taylor's bank account. To the extent Plaintiff's position is that the clock began ticking April 27, 2021, Plaintiff has been aware from the earliest moment of this dispute that notice was given on that date. Any amendment to the

---

[1] It remains unclear why Mr. Taylor amended the complained-of action onset date from May 14, 2021 to April 27, 2021 after the grievance procedure concluded. Based on briefing for the pending motions, it appears the parties may disagree about what specific action constitutes the alleged wrongful act, the notice that Mr. Taylor would be required to pay the entire premium, which apparently occurred April 27, 2021, or the actual payment of the premium, which appears to have happened on or about May 10, 2021. There is also disagreement as to whether Mr. Taylor maintained his status as a Union steward while on leave from work, even prior to officially beginning long-term disability. This matter could bear on whether the Union knew of Plaintiff requiring Mr. Taylor to pay 100 percent of the premiums on April 27, 2021, when Mr. Taylor received notice, or on May 14, 2021, when Mr. Taylor informed Mr. Bush of the matter. These disagreements, however, do not preclude summary judgment on this matter, nor are they especially germane to the present dispute, as this Court's role remains limited to determining whether the Arbitrator's decision derives its essence from the contract between the two parties rather the judging the underlying merits of the award. *Exec. Life Ins. Co. of New York v. Alexander Ins. Ltd.*, 999 F.2d 318, 320 (8th Cir. 1993).

date on which the complained-of action occurred is inconsequential and does not adequately account for delay in Plaintiff's discovery and assertion of a procedural timeliness argument.

It is also clear that the Arbitrator's conclusion as to Plaintiff's timeliness argument derives its essence from the CBA. Plaintiff is correct that the language of Article IX, Section 2 indicates that either party's failure to handle the grievance procedure according to the timeline identified in Article IX, Section 1, "shall result in the matter being dropped." It is settled law in the Eighth Circuit and elsewhere, at least in the context of statutory interpretation, that the use of the word *shall* is not permissive and indicates what follows is mandatory. *Hennepin Cnty. v. Fed. Nat. Mortg. Ass'n*, 742 F.3d 818, 822 (8th Cir. 2014). A close read of the Arbitrator's decision, however, shows the Arbitrator has not reached a conclusion as to whether Defendant in fact failed to comply with the eleven working day timeline. Rather, the Arbitrator simply finds, "The Grievant was clearly aware of the grievable incident on April 27, 2021 when he executed a form to elect optional insurance coverages while on [long-term disability] after being informed he would have to pay the full cost of them." The Arbitrator then goes on to acknowledge the Union's defense that Mr. Taylor was not a steward while off work, also recognizing the Union failed to inform Plaintiff of any change in Mr. Taylor's steward status as required by Article VII of the CBA.

The Arbitrator also explains that Plaintiff's failure to raise the timeliness issue during the grievance phase of dispute resolution prejudiced the Union by preventing the Union from making an informed decision about whether to settle the case or incur additional costs associated with formal arbitration. The Arbitrator acknowledges each party's "procedural mistakes," but stops short of concluding either party has violated Article IX's timeline. This understanding of the Arbitrator's analysis finds further support in the existence of what appears to be continued factual disagreement between the parties about when the eleven working day period began, as discussed

11

in footnote one. Because the Arbitrator did not find a violation of Article IX's timeline, the language of Article IX, Section 2 is inapplicable.

The Arbitrator's conclusion that "the procedural mistakes of both parties cancel each other out" is most appropriately understood as akin to a decision about threshold arbitrability of a procedural matter that draws its essence from the CBA, rather than the Arbitrator injecting his own standards into contractual language. *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 846 (8th Cir. 2001) (arbitrator decides arbitrability of procedural issues). This position finds further support the even heightened deference arbitrators enjoy in the evaluation of procedural rather than substantive matters. *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 846–47 (8th Cir. 2001) ("we must therefore accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds") (internal citations omitted).

II. **The Arbitrator's Decision on the Substantive Matters Derives its Essence from the CBA**

Plaintiff makes several arguments as to why the Arbitrator's decision on the underlying substantive issue reflects the Arbitrator exceeding his authority under the CBA and as a matter of law. First, Plaintiff argues the Arbitrator exceeded his authority by relying on a misunderstanding of the various relevant contract provisions. Plaintiff insists that, because Article XIX, Section 1(b) lacks language specifically applying the provision to situations where Union members are on long-term disability, the Arbitrator erred by failing to look for guidance from other CBA provisions, namely Article X, Section 5(G), the seniority provision, and Article IV, dealing with management rights.

Plaintiff offers no authority for the idea that absence of language specifically limiting Article XIX, Section 1(b) to Union members who are not on long-term disability, requires the Arbitrator to look elsewhere for guidance. Plaintiff repeatedly cites the last sentence of Article X, Section 5(G), which reads "the employee shall not accrue, or be paid any benefits based upon a calculation for the time during which such employee is absent." Plaintiff contends this language is the guiding authority as to whether Union members on long-term disability are entitled to partial payment of insurance premiums by Plaintiff. However, as the Arbitrator reasoned, Article X explicitly deals only with issues of seniority and includes no language that could lead one to reasonably conclude the provision applies more broadly. It is also questionable how Plaintiff believes the final sentence of Article X, Section 5(G) applies to whether Union members receive benefits while on long-term disability. The sentence discusses "absences" generally, which contrasts with the text of Policy H-15, which specifically references Plaintiff's long-term disability program.

Further, contrary to Plaintiff's argument, the Arbitrator has not disregarded Article IV, dealing with management rights, and Policy H-15. Rather, the Arbitrator appropriately assessed these authorities, concluding that Policy H-15 contradicts the unambiguous language of Article XIX, to the extent Policy H-15 applies to Union members. This is consistent with the Arbitrator's analysis of Articles X and XIX and likewise derives its essence from the plain language of the CBA.

Plaintiff also takes issue with the Arbitrator's treatment of prior examples of how Plaintiff has dealt with payment of benefits to Union members on long-term disability. Specifically, Plaintiff argues the Arbitrator referenced only once such example in his initial opinion, despite record evidence clearly establishing a second occurrence. This constitutes error, Plaintiff contends,

as the Arbitrator specifically relied on the presence of only one prior example of a Union member on long-term disability paying insurance premiums in their entirety to find absence of well-established past practice. From Plaintiff's perspective, this is significant because the Arbitrator specifically noted that "past practice is usually controlling." (Doc. 13-3 at 15). Plaintiff concedes the Arbitrator's ruling on Plaintiff's Motion to Reconsider acknowledges the existence of the second example.

It remains unclear how Plaintiff believes the Arbitrator's treatment of prior examples of how Union members have paid premiums while on long-term disability somehow reflects the Arbitrator instilling his own standard of justice. The Arbitrator's decision on the Motion for Reconsideration specifically references lack of persuasiveness due to the two prior examples involving situations that did not proceed through the grievance process. Further, Plaintiff offers no authority to support the idea that two examples of Union members paying entire premiums while on long-term disability must somehow constitute a well-established practice. No language in the CBA suggests that the Arbitrator has somehow exceeded his authority in reaching this conclusion.

## CONCLUSION

For foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Summary judgment is entered in favor of Defendant.

**IT IS SO ORDERED.**

DATED: January 17, 2024

                                              */s/ Douglas Harpool*
                                              **DOUGLAS HARPOOL**
                                              **UNITED STATES DISTRICT JUDGE**